974 F.2d 1330
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Raymond Leon CUSTER, Plaintiff-Appellant,
v.
Richard D. HALL, Defendant-Appellee,
and
HARRISON, BENSON, WORTH, FISH, COOKE, NORTH & LANDRETH, Defendant.
 No. 91-2673.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 1, 1992
Decided: September 3, 1992
 
 Gary Michael Bowman, MARTIN, HOPKINS, LEMON & EDWARDS, P.C., Roanoke, Virginia, for Appellant.
 William Lindsay Osteen, Jr., ADAMS & OSTEEN, Greensboro, North Carolina, for Appellee.
 Before WIDENER and NIEMEYER, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This appeal challenges the district court's dismissal of a legal malpractice suit.
 
 
 2
 When Raymond L. Custer was suspected of participating in the theft of garment-quality fabrics from his employer, Bassett-Walker, Inc., a fabric manufacturer in Martinsville, Virginia, for resale to competing businesses, including one he established, Custer was confronted by Bassett-Walker management with their suspicion at a meeting on July 20, 1987. Custer denied wrongdoing, but nevertheless he was concerned about criminal prosecution and was evasive and dishonest in his responses. When, at the meeting, Custer was fired, James Matthews, the company attorney, advised Custer that unless he cooperated and provided information to further the company's investigation of the matter, it would name Custer as a defendant in a lawsuit. Custer left the meeting with the belief that if he cooperated, he would not be sued. He then called the defendant Richard D. Hall, an attorney in Greensboro, North Carolina, for advice. Following the next three days, during which Hall negotiated with counsel for Bassett-Walker and provided Custer with advice, Bassett-Walker, Inc. sued Custer and others for participation in a racketeering organization whose purpose was to steal fabric from Bassett-Walker and sell it to others. Custer claims that had it not been for the legal malpractice of Hall in the three days of July 21 through July 23, suit would not have been filed and Custer would not have incurred the legal fees to extricate himself from the litigation.[1]
 
 
 3
 Custer sued Hall in federal court, invoking diversity jurisdiction and alleging legal malpractice and a breach of fiduciary duty. At trial, upon the completion of plaintiff's case, the district court granted the defendant's motion for judgment as a matter of law, concluding that Custer had failed to present sufficient evidence to prove his malpractice claim. On appeal, Custer identified several issues of fact which he contends should have gone to the jury. Because, however, Custer offered no evidence to show that the lawsuit filed against him on July 24, 1987, was the product of legal malpractice by Hall, we affirm.
 
 
 4
 The district court is permitted to "grant a motion for judgment as a matter of law" during a jury trial after a party has been fully heard on an issue only if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed. R. Civ. P. 50(a). To grant the motion the district court must consider the evidence in the light most favorable to the nonmoving party and determine "whether a reasonable trier of fact could draw only one conclusion from the evidence." Townley v. Norfolk & Western Ry. Co., 887 F.2d 498, 499 (4th Cir. 1989). As in the case of a summary judgment, to avoid judgment as a matter of law, the non-moving party must produce at trial more than a scintilla of evidence to support the material aspects of his or her case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986). We review the district court's decision to grant the Rule 50(a) motion by applying the same standards de novo. Townley, 887 F.2d at 499.
 
 
 5
 Hall's manner of representing Custer during the days from Tuesday, July 21, through Thursday, July 23, the period before BassettWalker filed its lawsuit against Custer, is not materially in dispute. When Custer called Hall on the evening of July 20, Custer stated that he wanted counsel to help him cooperate with Bassett-Walker and to ensure that he did not get sued. Hall instructed Custer to write down all of the facts and proposed they meet on Tuesday, July 21. At the meeting on July 21, Custer repeated his understanding that BassettWalker would not sue him if he agreed to cooperate, and he expressed his wish to cooperate. Custer and Hall reviewed all of the facts disclosed by Custer, the threatened suit, and a possible deal for Custer not to be sued. During the course of that meeting Custer conceded that he was not sure whether he trusted Bassett-Walker's offer. Custer later acknowledged that he did not tell Hall of some particularly incriminating evidence against Custer which suggested that he was more deeply involved than Hall was advised, specifically that he had arranged a transfer of fabric from Bassett-Walker to a customer who issued a check for $20,000 to Custer, which was never turned over by Custer to Bassett-Walker.
 
 
 6
 On Wednesday, July 22, Hall met with Matthews, BassettWalker's attorney, to discuss the potential lawsuit and a settlement, but no agreement was reached. On Thursday, July 23, while in a meeting together, Custer and Hall were advised that Matthews at Bassett-Walker had issued an ultimatum that "unless [Custer] is in their office tomorrow morning [Friday, July 24] with some attorney other than [Hall], they are going to file the suit." Apparently, Matthews was upset by the fact that Hall was also representing Ernest Harman, Custer's colleague and another suspect in the fabric losses. Hall then advised Custer that he had several alternatives: (1) Custer could cooperate through another attorney, (2) he could choose not to cooperate and let Bassett-Walker file the suit, or (3) he could allow Bassett-Walker to file the lawsuit and seek to cooperate at a later time. Following a full discussion about the possibilities, during which Custer claims he felt pressed to follow Hall's advice not to cooperate, he agreed with Hall that they should let Bassett-Walker file the lawsuit.
 
 
 7
 Notwithstanding the agreement reached at the Thursday, July 23, meeting and unknown to Hall, Custer immediately went to see another attorney, Edwin A. Gendron, Jr., in Martinsville, Virginia. Following an hour-long consultation between Custer and Gendron, Gendron called Matthews at Bassett-Walker and was advised that if Custer would cooperate with their investigation, Custer would not be sued. The next morning, Custer went back to Gendron's office to pursue further the arrangement discussed between Gendron and Matthews. By the time Gendron's law partner reached Matthews at Bassett-Walker, however, the suit against Custer and others had been filed. Custer then returned to Hall and let Hall continue to represent him, although Custer paid Gendron for his services.
 
 
 8
 Custer contends that Hall breached his professional duty in failing to prevent the filing of the suit by pursuing a cooperation arrangement.[2] Relying on his initial request that Hall seek a cooperation agreement and Hall's failure to do so, Custer contends that Hall's conduct is responsible for suit having been filed against him on Friday, July 24, 1987, causing him legal expenses.
 
 
 9
 Following the plaintiff's case the district court granted defendant's motion for judgment as a matter of law. In giving the reasons to support the conclusion that the evidence did not establish malpractice on the part of Hall during the pertinent July 21-23 time frame, the district court stated it could not rely on testimony of Custer's expert whose opinion was not based on the facts established. The court also expressed difficulty with Custer's failure to disclose to Hall Custer's $20,000 diversion from Bassett-Walker. The most serious problem identified by the district court, however, was one of causation in that Custer went to Gendron for his representation and did not follow the advice of Hall which was to let the suit be filed.
 
 
 10
 We agree with the district court's conclusion, particularly in the observation that Custer failed to establish the causation element of his malpractice claim as a matter of law. Even assuming arguendo that Hall's delay in cooperating with the Bassett-Walker investigation constituted legal malpractice, in order to prevail on his claim Custer had to provide sufficient evidence for a jury to conclude that such delay was the proximate cause of Bassett-Walker's filing the lawsuit against Custer on July 24. Because the counsel for Bassett-Walker, Matthews, was deceased at the time of trial, Custer was unable to produce evidence to substantiate his claim that earlier cooperation would have deterred Matthews from filing the suit, leaving that argument standing as pure speculation. Simple evidence to the effect that Matthews said cooperation by Custer would avoid his inclusion in the suit is insufficient, as the evidence produced at trial indicated that such statements were made to Gendron as late as Thursday, July 23, yet even when Gendron affirmatively pursued Matthews' suggestion, Matthews nevertheless named Custer as a defendant in the suit filed. This deficiency of evidence, in combination with the already mentioned fact that Custer sought, obtained and decided to pursue the advice of Gendron rather than Hall, legally precludes a finding in Custer's favor.
 
 
 11
 In addition to the causation problem, it is apparent that Hall and Custer discussed Custer's available legal options in the context of facts revealed by Custer to Hall. There is no evidence suggesting that any of these options violated a standard of care. More specifically, no evidence established that Hall's recommendation to let the suit be filed was not just as good a judgment or trial tactic as that of attempting to appease the party who threatened suit. And Custer cannot prevail on a theory that Hall neglected to pursue his wishes when, apparently, at the time, Custer agreed to the tactics suggested by Hall, thereby abandoning his earlier instruction to Hall to seek a cooperation agreement. From Hall's perspective at the time, therefore, the client's decisions were being carried out.
 
 
 12
 Because Custer has failed to establish both the breach of a duty by Hall and the causative link between anything Hall did and the loss claimed, elements necessary to a malpractice case under Virginia law, see Allied Productions, Inc. v. Duesterdick, 232 S.E.2d 774, 775 (Va. 1977), we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 Pursuant to a settlement, Custer was ultimately dismissed from the litigation without payment of any money to the plaintiffs
 
 
 [2]
 Custer also contends that a conflict of interest that later arose in the litigation when Bassett-Walker amended its pleadings to add other parties, who were Hall's clients, was foreseeable during the three days in July and that Custer's advice was tainted by the potential conflict. Hall denies knowledge of any conflict at the time and, more importantly, there is simply no evidence to support the contention that any advice given or action pursued by Hall was related to the potential conflict that later developed